# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jimmy D. Chester,**
**Petitioner Below, Petitioner**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0678** (Kanawha County 12-AA-91)

**Joe E. Miller, Commissioner of the**
**West Virginia Division of Motor Vehicles,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jimmy D. Chester, by counsel Troy Giatras and Matthew Stonestreet, appeals an order of the Circuit Court of Kanawha County entered May 15, 2013, which affirmed a final decision of the Chief Hearing Examiner of the Office of Administrative Hearings revoking petitioner's driver's license.  Respondent Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles, by Senior Assistant Attorney General Janet E. James, filed a response in support of the circuit court's order, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At an administrative hearing conducted before the Office of Administrative Hearings ("OAH") on March 22, 2012,[1] the following relevant facts were presented:  On December 31, 2010, at approximately 10:41 p.m., Deputy Shaun Townsend of the Logan County Sheriff's Department, was driving behind a 2008 Dodge Nitro in the area of State Route 10 (North Boulevard), in Logan County.  Upon observing the vehicle weave back and forth between lanes and make an abrupt turn, Deputy Townsend initiated a stop of the vehicle.  As Deputy Townsend approached the vehicle, which was being driven by petitioner, he observed petitioner quickly place snuff into his mouth. Deputy Townsend also smelled the odor of alcoholic beverage coming from the vehicle and noted that petitioner had bloodshot eyes and was arrogant in his manner.  He further observed three unopened bottles of wine in the back seat of petitioner's vehicle.

After receiving the requested driver's information from petitioner, Deputy Townsend

---

[1]Petitioner timely requested an administrative hearing following entry of the Commissioner's Order of Revocation entered on January 20, 2011.

returned to his patrol car with the intention of issuing petitioner a warning ticket for the abrupt lane changes he had made. When he returned to petitioner's vehicle, Deputy Townsend picked up and smelled a red plastic cup that was in the vehicle. The contents of the cup smelled like beer. Deputy Townsend also detected the odor of beer on petitioner's breath. When he asked petitioner what was in the cup, he replied that "he peed in it."

Petitioner exited the vehicle and swayed slightly as he stood. Meanwhile, another law enforcement officer, Deputy Mathis, arrived on the scene. Deputy Mathis administered three field sobriety tests to petitioner: the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Petitioner failed all three tests and refused to submit to the preliminary breath test. Based upon Deputy Townsend's reasonable suspicion that petitioner was driving under the influence of alcohol ("DUI"), petitioner was arrested at 11:05 p.m., at which time Deputy Townsend read to petitioner the implied consent statement,[2] which contained the penalties for refusing to submit to a designated secondary chemical test, as required by West Virginia Code § 17C-5-4[3], and notice of the fifteen-minute time limit for refusal specified in West Virginia Code § 17C-5-7.[4]

Upon arrival at the State Police barracks, petitioner refused the designated secondary chemical test of the breath (Intoximeter)[5] and advised Deputy Townsend that "he didn't know

---

[2]Deputy Townsend also provided petitioner a copy of the implied consent statement.

[3]West Virginia Code § 17C-5-4(e) provides as follows:

Any person to whom a preliminary breath test is administered who is arrested shall be given a written statement advising him or her that his or her refusal to submit to the secondary chemical test pursuant to subsection (d) of this section will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life.

[4]West Virginia Code § 17C-5-7(a) provides, in relevant part, as follows:

If any person under arrest as specified in . . . [§17C-5-4] . . . refuses to submit to any secondary chemical test, the tests shall not be given: Provided, That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life; and that after fifteen minutes following the warnings the refusal is considered final. The arresting officer after that period of time expires has no further duty to provide the person with an opportunity to take the secondary test.

[5]The evidence at the revocation hearing showed that Deputy Townsend was trained at the State Police Academy to administer the Intoximeter test and had been certified to do so since 2004.

2

the law, and that he had sugar, and his sugar would falsely state he had been drinking."[6] After approximately twenty minutes, petitioner was offered the test again. However, he refused. Petitioner also refused to answer any questions in a post-arrest interview.

Petitioner testified that he does not drink beer because he is a diabetic and that it could "kill" him.[7] He further testified that his right foot was cut off in a mining accident in 1993, that it was reattached with skin grafts, fourteen screws, and two steel plates, and that it caused him to lose feeling in that foot. He explained that this injury caused him to be unsteady on his feet during the traffic stop. Petitioner testified that he had not been drinking on the day of the traffic stop and arrest.

Prior to the March 22, 2012, administrative hearing, petitioner requested from the Division of Motor Vehicles ("DMV"), *inter alia*, copies of the videotape of the field sobriety tests, the DUI information sheet, and the implied consent statement. Although none were provided to either petitioner or respondent prior to the hearing, they were provided at some point during the course of the hearing. In particular, the videotape showing petitioner taking the field sobriety tests was viewed during the hearing.

By order entered July 20, 2012, the hearing examiner concluded that, as a matter of law, petitioner "drove a motor vehicle in this State while under the influence of alcohol and refused to submit to a finally designated secondary chemical test[,]"[8] and further concluded that the Commissioner's revocation order should be affirmed. That order stated, in relevant part, that "[p]etitioner was stopped because he was driving in an erratic manner[;]" that he "appeared to be off balance when he walked, and was slightly unsteady as he stood[;]" and that "[t]he odor of an alcoholic beverage was on his breath and a cup of beer was in the console of his vehicle." The order concluded that

> [i]n considering the overall appearance of the Petitioner and his inability to balance well, the Investigating Officer[9] had a reasonable suspicion the Petitioner was driving under the influence of alcohol. The Investigating Officer testified that he relied on eleven years of experience as a police officer, making contact with intoxicated individuals and making DUI arrests, in determining whether to arrest the Petitioner. The Investigating Officer testified that the Petitioner displayed signs of intoxication.

(footnote added).

---

[6]Petitioner testified that he is a diabetic.

[7]Petitioner testified that he drinks wine with meals to aid in "digestion."

[8]We note that petitioner does not address the hearing examiner's conclusion that petitioner's refusal to submit to the secondary chemical test constituted grounds for revocation of his driver's license.

[9]The investigating officer was Deputy Townsend.

3

Although the order acknowledged petitioner's testimony that he suffered injuries in a mine accident, it, nonetheless, concluded that petitioner's testimony failed to discredit Deputy Townsend's testimony, and concluded further that petitioner "was offered a designated secondary chemical test of the breath, which would have provided whether or not he was under the influence of alcohol and he refused the test." Finally, the order expressly noted that neither the videotape viewed at the hearing nor the results of the field sobriety tests were considered in the hearing examiner's decision. By final order of OAH Chief Hearing Examiner John G. Hackney, Jr., entered July 22, 2012, the revocation order was affirmed.

Petitioner appealed the decision to the Circuit Court of Kanawha County and, by order entered May 15, 2013, the circuit court affirmed the order of the OAH. This appeal followed.

In this case, petitioner appeals the circuit court's order affirming the administrative revocation of his driver's license. The standard of review has been previously articulated as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

Petitioner's first assignment of error is that the circuit court erred in affirming the order of the OAH revoking his driver's license because the DMV failed to provide him with copies of the videotape of the field sobriety tests, the DUI information sheet, and the implied consent statement prior to the March 22, 2012, administrative hearing. Petitioner argues that, as a result, he was deprived of the opportunity to review this evidence prior to the hearing and to prepare to rebut it, in violation of his procedural due process rights. We disagree.

During the course of the administrative hearing, petitioner viewed the videotape and examined the DUI information sheet and the implied consent statement. At no time on appeal to either the circuit court or this Court has petitioner indicated just how he was deprived of the ability to rebut the forgoing evidence. Indeed, petitioner failed to request a continuance so that he could prepare to rebut this evidence. Petitioner proceeded to testify and his counsel cross-examined the investigating officer, Deputy Townsend. Furthermore, the hearing examiner's order clearly indicated that neither the videotape (showing Deputy Mathis administering the field sobriety tests to petitioner) nor the results of those tests were considered in the decision to revoke petitioner's license.

Petitioner's remaining assignment of error is that the evidence presented did not support revocation of his driver's license. Petitioner argues that given the fact that the hearing examiner did not consider the results of the field sobriety tests and that there was no objective scientific evidence or admission that he was driving under the influence, the evidence was insufficient to revoke his license. Petitioner contends that the hearing examiner improperly relied upon Deputy

4

Townsend's subjective evaluations and failed to credit petitioner's testimony that he does not drink beer because he is diabetic and that past mining injuries caused him to be unsteady on his feet during the traffic stop. Petitioner's argument is without merit.

In syllabus points one and two of *Albrecht v. State of West Virginia*, *et al.*, this Court held as follows:

> There are no provisions in either W.Va. Code, 17C-5-1 (1981), *et seq.,* or W.Va. Code, 17C-5A-1 (1981), *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

> Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

173 W.Va. 268, 314 S.E.2d 859 (1984). In the present case, the evidence was sufficient to revoke petitioner's driver's license. Deputy Townsend, a police officer since 1999 and experienced in detecting impaired driving, initiated the traffic stop because petitioner's vehicle was weaving, turned abruptly, and stopped in the wrong place. When he approached petitioner's vehicle, he observed the odor of an alcoholic beverage on petitioner's breath; observed petitioner hastily place snuff in his mouth as if to conceal the alcoholic odor on his breath; and observed petitioner's eyes to be bloodshot. As petitioner exited his vehicle, Deputy Townsend took a cup from the vehicle and testified that its contents smelled like beer. Deputy Townsend further testified that petitioner was unsteady exiting his vehicle; unsteady while standing; and staggered when he walked. For his part, petitioner testified about his medical problems but offered no objective evidence (medical or otherwise) in support thereof. This Court has previously stated that "[c]redibility determinations made by an administrative law judge are . . . entitled to deference." Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Additionally, it is undisputed that Deputy Townsend read to petitioner the implied consent statement and provided him a copy of same, thereby apprising him of the potential consequences of refusing to take the designated secondary chemical test. Nonetheless, petitioner refused to submit to the secondary chemical test of the breath. As previously noted, such refusal "will result in the revocation of his . . . license to operate a motor vehicle in this state. . . ." W.Va. Code §§ 17C-5-4(e) and -7(a).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II